UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:

OLGA CHRISTODOULAKIS,

                    Debtor.
------------------------------------------------------X
GREEN TREE SERVICING LLC,

                    Plaintiff,

      - against -

OLGA CHRISTODOULAKIS,

                    Defendant.
------------------------------------------------------X

Chapter 7

Case No.: 16-73610-ast

Adv. Pro. No.: 16-8155-ast

## DECISION AND ORDER GRANTING DEBTOR'S MOTIONS TO DISMISS

Currently pending before the Court are the various motions to dismiss filed by Olga

Christodoulakis (the "Debtor"). [dkt items 5, 12, 21] For the reasons to follow, Debtor's motions

to dismiss are granted.

## JURISDICTION AND VENUE

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C.

§§ 157(b)(2)(A), (I), (J) and 1334(b), and the Standing Orders of Reference in effect in the

Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but

made effective *nunc pro tunc* as of June 23, 2011.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Findings of fact and conclusions of law are not required on a Federal Rule of Civil

Procedure ("FRCP") 12(b)(6) motion, and this Court accepts as true all properly pled factual

allegations in the Complaint and draws all inferences in favor of the non-moving party for the

purposes of deciding these motions to dismiss.

## BACKGROUND AND PROCEDURAL HISTORY[1]

On August 8, 2016, Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), assigned case number 16-73610-ast.[2]

On October 20, 2016, Green Tree Servicing LLC (the "Plaintiff") commenced this adversary proceeding by filing a complaint (the "Complaint" or "First Complaint") against Debtor. [dkt item 1] In the Complaint, Plaintiff alleges two causes of action under 11 U.S.C. § 523(a)(2)(A), both arising from Debtor's actions in connection with the free-and-clear sale of a mortgaged piece of real property and her failure to repay the mortgage, which was unrecorded at the time of the sale.  The debt Plaintiff seeks to be held nondischargeable is a damages award entered by the U.S. District Court for the Eastern District of New York in an action styled *Green Tree Servicing LLC v. Christodoulakis, et al.*, (14-cv-2037) (the "District Action").  The judgment in the District Action was based on the same core facts Plaintiff pled in this adversary proceeding.

Here, Plaintiff alleges Debtor's parents, Nicholas and Alexandra Christodoulakis (the "Parents") owned a property known as 2022 Mill Avenue, Brooklyn, New York (the "Property"). Compl. ¶¶ 8-9.  In October 2003, the Parents obtained a $300,000 loan from New Century Mortgage Corporation which was secured by a mortgage against the Property (the "2003 Mortgage").  Compl. ¶ 10.

In April 2008, the Parents added Debtor to the title of the Property through a "no consideration" quitclaim deed, indicating the three owned the Property as tenants in common.

---

[1] The factual background and procedural history are taken from the pleadings, exhibits and other papers submitted by the parties, and the public dockets in this case.
[2] Unless otherwise indicated, all statutory references are to title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code").

Compl. ¶ 11.  Soon thereafter, in April 2008, the Parents and Debtor entered into a contract for the Parents to sell their interests in the Property to Debtor for $550,000 (the "2008 Sale"). Compl. ¶ 12.  Plaintiff alleges Debtor knew the 2008 Sale was a sham.  Compl. ¶ 13.

Debtor applied to Bank United ("BU") for a loan to finance the 2008 Sale.  Compl. ¶ 14. Debtor executed a note in favor of BU, dated May 22, 2008, with a principal amount of $385,000, secured by a mortgage in that amount against the Property (the "BU Note" and "BU Mortgage," and together the "BU Loan").  Compl. ¶ 15.  Debtor used $295,298.38 of the BU Loan to satisfy the 2003 Mortgage and the Parents deeded the Property to Debtor (the "Deed"). However, the BU Mortgage was not recorded when the BU Loan closed, and the Deed was not recorded and is missing.  Compl. ¶¶ 16-18.

Debtor directed $51,800.18 of the BU Loan to be drawn from the escrow account of BU's closing attorney to be paid to her mother, Alexandra.  Compl. ¶ 19.  The check was deposited into a JP Morgan Chase account maintained by Debtor for the benefit of her mother. Compl. ¶¶ 20, 21.  Then, between June and November 2008, Debtor made a series of withdrawals that "were unusually large and not consistent with the normal withdrawals" from the account, totaling more than $59,000.  Compl. ¶¶ 22-23.

On March 8, 2013, Debtor and the Parents sold the Property for $354,000 to Michael and Donna Carter (the "2013 Sale").  Compl. ¶ 25.  Plaintiff alleges Debtor knew there was a mortgage against the Property in favor of BU, despite the BU Mortgage being unrecorded. Compl. ¶ 24.  The BU Mortgage was not paid off at the time of the 2013 Sale.

From March 15 to March 28, 2013, Debtor made another series of cash withdrawals from the JP Morgan Chase account, totaling more than $100,000.  Compl. ¶ 28.

Plaintiff is the servicer for the BU Note and Mortgage.  BU and/or Plaintiff continued to

bill Debtor for payments due under the BU Note and Mortgage; Plaintiff alleges Debtor "never re-paid the BU Loan as she had promised to do." Compl. ¶¶ 24, 29. It was not until May 2013, and after the 2013 Sale closed, that the BU Mortgage was recorded. Compl. ¶ 17.

In March 2014, Plaintiff brought suit in federal district court against Debtor and her Parents. Compl. ¶¶ 29-31.

In October 2014, Judge Feuerstein awarded Plaintiff an attachment of the real and personal property of Debtor and her Parents, finding sufficient evidentiary facts that Debtor's withdrawals from her bank account after the 2013 Sale were intended to dispose of, transfer, or hide assets from her creditors. Compl. ¶ 30; *Green Tree Servicing LLC v. Christodoulakis*, No. 14-cv-2037(SJF)(SIL), 2014 WL 5475514 (E.D.N.Y. 2014). [dkt items 1-8, 11¶ 4, 26-1 at 2]

In September 2015, the district court found that Debtor breached the BU Note and that the Parents were unjustly enriched by "pocketing the proceeds" from the 2013 Sale and taking advantage of the unrecorded BU Mortgage. *Green Tree Servicing LLC v. Christodoulakis*, 136 F. Supp. 3d 415 (E.D.N.Y. 2015), *amended on reargument*, 136 F. Supp. 3d 415 (E.D.N.Y. 2016). [dkt items 11 ¶ 4, 26-1 at 2]

In May 2016, a final judgment was entered in favor of Plaintiff in the amount of $522,254.94 against Debtor and $336,154.26 against the Parents (the "Judgment"). Compl. ¶ 31. [dkt item 11 ¶ 5]

The Parents appealed the Judgment but Debtor did not. In April 2017, the U.S. Court of Appeals for the Second Circuit held that the Parents were not unjustly enriched by Debtor using the BU Loan to pay off the 2003, but that because the Parents gave up their interest in the Property, they were unjustly enriched by $106,511.03 in proceeds they received from the 2013 Sale. *Green Tree Servicing LLC v. Christodoulakis*, 689 F. App'x 66, 70-71 (2d Cir. 2017). [dkt

item 26-1 at 2]

Here, Plaintiff seeks to except the amount of the Judgment as against Debtor from discharge.  In its First Complaint for its first cause of action, Plaintiff alleges the 2013 Sale was fraudulent, violated N.Y. Penal Law § 185.10, and the Judgment should be nondischargeable under § 523(a)(2)(A).  Plaintiff's second cause of action alleges the Judgment is nondischargeable under § 523(a)(2)(A) because Debtor "aided and abetted her [P]arents in their fraudulent attempt to use Plaintiff's assignor's funds to satisfy the New Century Mortgage, thereby enabling the three of them . . . to sell the Property in 2013 . . . free and clear of such mortgage, . . . reaping a windfall of $295,298.38." Compl. ¶ 37.

On November 21, 2016, Debtor moved to dismiss the First Complaint pursuant to FRCP 12(b)(6) (the "First MTD"). [dkt item 5] Debtor set forth three arguments: (1) the Complaint fails to satisfy FRCP 9(b)'s heightened pleading requirements; (2) Plaintiff did not meet its burden of proof for a § 523(a)(2)(A) exception to discharge; and (3) Plaintiff waived its claim for fraud in the District Action.

On December 22, 2016, Plaintiff filed an affirmation in opposition to the First MTD, asserting the Complaint sufficiently pleads a plausible claim for relief under both causes of action, and that it did not waive its fraud claim with prejudice.[3] [dkt item 11]

On December 21, 2016, while the First MTD was pending, Plaintiff filed an amended complaint (the "First Amended Complaint"), which added several new allegations and a cause of action under § 523(a)(2)(B).  [dkt item 9]

On December 26, 2016, Debtor moved to dismiss the First Amended Complaint on the

---

[3] Plaintiff dismissed its fraud claim in the District Action pursuant to FRCP 41(a)(2), which provides that a dismissal will be without prejudice unless the order of dismissal states otherwise.  There is no indication Plaintiff's fraud claim was withdrawn with prejudice, therefore Debtor's argument that Plaintiff is precluded from raising issues of fraud before this Court is meritless.

ground that it is untimely (the "Second MTD"). [dkt item 12]

On January 10, 2017, Plaintiff filed an opposing affirmation to the Second MTD, arguing that even if the First Amended Complaint is untimely, it relates back to the First Complaint and the Court should consider the merits of the § 523(a)(2)(B) claim. [dkt item 15]

Because the First Amended Complaint contained personal identifiers of Debtor, upon motion, the Court restricted access to it and ordered Plaintiff to file an identical complaint with the personal identifiers redacted. [dkt item 18]

In compliance with the Court's Order, on May 17, 2017, Plaintiff filed a second amended complaint (the "Second Amended Complaint" and together with the First Amended Complaint, the "Amended Complaints"). [dkt item 19]

The Amended Complaints each include allegations that had not been asserted in the Complaint – primarily that Debtor submitted a "Uniform Residential Loan Application" when she applied for the BU Loan, in which she stated she was the manager of a diner and made $6,357 per month, but that Debtor never worked at the diner.  Second Am. Compl. ¶¶ 16-17. Further, Plaintiff alleges Debtor never lived at the Property despite Debtor's statement in her loan application that the Property was her primary residence.  Second Am. Compl. ¶ 18.  Plaintiff asserts the statements by Debtor in the loan application entitle Plaintiff to an exception to discharge under § 523(a)(2)(B) for a loan obtained by use of a false financial statement in writing.  Second Am. Compl. ¶¶ 44-47.

On June 19, 2017, Debtor filed a third motion to dismiss, reiterating the arguments in the First and Second MTDs and asserting that the Amended Complaint does not relate back to the First Complaint (the "Third MTD"). [dkt item 21]

On June 30, 2017, Plaintiff filed an affirmation in opposition to the Third MTD,

repeating its arguments from its opposition to the Second MTD. [dkt item 22]

On June 30, 2017, the Court ordered Plaintiff to file a response to the Second MTD by July 31, 2017 to identify authority to file an untimely amended complaint, the differences in factual allegations in the three complaints, whether the Amended Complaint should relate back to the First Complaint, and how a New York Penal Law § 185.10 violation could give rise to a claim under § 523(a)(2)(A). [dkt item 23] It was not until October 2017 that Plaintiff moved for an extension of time to comply with the June 2017 order, and did so by misfiling that request in the main case, not this adversary. [main case dkt item 29] A hearing was originally set for November 14, 2017 on Plaintiff's time extension motion, and after sending notice to the parties, changed by the Court to November 7.  Plaintiff did not appear at the November 7 hearing and the Court deemed the Second and Third MTDs submitted without responses and closed the pleadings, finding no excusable neglect for Plaintiff's failure to appear.

On November 16, 2017, Plaintiff filed a motion to vacate its "default" from failing to appear on November 7 and to receive an extension of time to comply with the June 2017 order, stating the email sent by the Court that rescheduled the hearing was directed to a spam folder and unseen by counsel (the "Motion to Vacate"). [dkt item 26] Debtor opposed this motion, stating Plaintiff is not in default because there is no entry of default on the docket and Plaintiff's failure to appear on account of a purported email malfunction is not excusable neglect. [dkt item 27] Because no default was entered against Plaintiff, the Motion to Vacate is denied.

### DISCUSSION

### I. Timeliness and Relation Back of the Amended Complaint

The deadline to file a complaint asserting an exception to discharge under § 523(a)(2) is governed by Federal Rule of Bankruptcy Procedure ("FRBP") 4007.  FRBP 4007(c) provides

that an adversary proceeding under § 523(a)(2) must be commenced "no later than 60 days after the first date set for the meeting of creditors under § 341(a)." FED. R. BANKR. P. 4007(c). After this sixty-day period has lapsed and a creditor neither objected nor filed a motion to extend time for an objection, "a bankruptcy court has no power to determine the dischargeability of the debt in question." *Re/Max Props., Inc. v. Barnes* (*In re Barnes*), 96 B.R. 833, 835 (Bankr. N.D. Ill. 1989). Even where a creditor has timely filed a § 523(a)(2) complaint, FRCP 15, made applicable here by FRBP 7015, provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or; (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), . . . whichever is earlier." FED. R. CIV. P. 15(a)(1). "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." FED. R. CIV. P. 15(c)(1)(B). "An amended complaint is deemed to arise out of the same conduct, transaction or occurrence as the original complaint when both are linked by a common core of operative facts." *Rescuecom Corp. v. Khafaga* (*In re Khafaga*), 431 B.R. 329, 334 (Bankr. E.D.N.Y. 2010) ("*Khafaga II*") (quoting *Ainbinder v. Kelleher*, No. 92 Civ. 7315(SS), 1997 WL 420279, at *9 (S.D.N.Y. July 25, 1997)). The essential inquiry to determine "whether the new allegations 'relate back is whether the defendant was given adequate notice that such claims might be made upon examining the facts alleged in the original pleading.'" *Marine Midland Bank v. Keplinger & Assocs., Inc.*, 94 F.R.D. 101, 104 (S.D.N.Y. 1982) (quoting *Rosenberg v. Martin*, 478 F.3d 520, 526 (2d Cir.), *cert. denied*, 414 U.S. 102 (1973)). The new allegations must "amplify the facts alleged in the original pleading or set forth those facts with greater specificity." *Ainbinder*, 1997 WL 420279,

at * 9 (alteration in original) (quoting *Oliner v. McBride's Indus. Inc.*, 106 F.R.D. 9, 12 (S.D.N.Y. 1985)).

Here, it is undisputed that Plaintiff's First Complaint was timely and that the Amended Complaint was filed beyond the applicable 21-day period. The deadline to file a complaint to object to the dischargeability of a debt was November 18, 2016 and the First Complaint was filed on October 20, 2016. The deadline to amend that complaint was December 13, 2016, which was 21 days after the First MTD was filed, and the Amended Complaint was not filed until December 21, 2016 and is therefore untimely.

Further, the U.S. Supreme Court has recently emphasized the differences between § 523(a)(2)(A) and § 523(a)(2)(B) claims. *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1763-64 & 1763 n.6 (2018). Plaintiff's § 523(a)(2)(B) claim in the Amended Complaints do not relate back to the date the First Complaint was filed because it does not arise from the same core of operative facts as the § 523(a)(2)(A) claims and is based on different elements.[4] Plaintiff's § 523(a)(2)(A) claims are based upon Debtor's knowledge of the BU Loan when selling the Property in 2013 and Debtor's alleged aiding and abetting of her Parents' reaping of a windfall due to the BU Mortgage being unrecorded. The § 523(a)(2)(B) claim is based upon alleged misstatements contained in Debtor's application for the BU Loan. This loan application was not mentioned in or attached to the First Complaint. Further, the § 523(a)(2)(A) claims are based entirely on Debtor's actions that occurred after she received the proceeds of the BU Loan whereas the § 523(a)(2)(B) claim concerns Debtor's conduct before the BU Loan was advanced, and more specifically, when Debtor was applying for the BU Loan. The § 523(a)(2)(A) claims operate on a different timeline and a completely unrelated set of facts than the § 523(a)(2)(B)

---

[4] Plaintiff does not allege that the First Complaint relates back to the pleadings filed in the District Action.

claim, and, as such, did not provide Debtor with sufficient notice to warrant a determination that the Amended Complaints relate back. *See Chase v. Chase* (*In re Chase*), No. 8-15-74237-LAS, 2018 WL 2059602, at *7 (Bankr. E.D.N.Y. May 1, 2018); *see also Morency v. NYU Langone Med. Ctr. Hosp.*, No. 15 Civ. 9142(NRB), 2017 WL 1536057, at *3 (S.D.N.Y. Apr. 17, 2017) (amendment did not relate back where the original complaint for a 2015 wrongful termination claim concerned allegations of conduct in 2011 and 2012 and the amended complaint added a whistleblower claim based upon allegations that occurred "more recently" to the firing); *Khafaga II*, 431 B.R. at 335 (amendment did not relate back where the original complaint set forth allegations that occurred after the execution of franchise agreements and the amended complaint added allegations that occurred prior to execution); *Ainbinder*, 1997 WL 420279, at *9 (amendment did not relate back where the original complaint contained no allegations that occurred after July and the amended complaint added events that took place in November). "The factual discrepancies between the original and amended claims—different time frames, different alleged conduct, and different operative facts—preclude a finding that the amended claim relates back." *Khafaga II*, 431 B.R. at 335. Thus, because the § 523(a)(2)(B) claim does not relate back and the deadline to bring a § 523(a)(2) claim has passed, the § 523(a)(2)(B) claim is untimely and is dismissed.

Therefore, the Court need only analyze the timely filed § 523(a)(2)(A) claims for Rule 12(b)(6) purposes.

## II. Motion to Dismiss
### A.  Legal Standard

Under the U.S. Supreme Court's *Iqbal*/*Twombly* analysis, to survive a motion to dismiss, a complaint must contain sufficient factual matter, which, when accepted as true, is adequate to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the relief sought.  *Iqbal*, 556 U.S at 678; *Twombly*, 550 U.S. at 556.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted" so as to create liability.  *Iqbal*, 556 U.S. at 678.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal citations omitted)).

Neither *Iqbal* nor *Twombly* departed from the standard that, in considering a FRCP 12(b)(6) motion, a court is to accept as true all factual allegations in the complaint and draw all inferences in favor of the plaintiff.  *Id.* at 678-79; *Twombly*, 550 U.S. at 556-56; *see also Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  However, as the Supreme Court stated in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Moreover, a court need not "accept as true a legal conclusion couched as a factual allegation," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 678-79 (citing Fed. R. Civ. P. 8(a)(2)).

When a complaint alleges fraud or mistake, it must also satisfy the heightened pleading requirements of FRCP 9(b), made applicable here by FRBP 7009.  *See* Fed. R. Civ. P. 9(b); *Am. Express Travel Related Servs. Co. v. Henein (In re Henein)*, 257 B.R. 702, 706 (Bankr. E.D.N.Y. 2001).  FRCP 9(b) requires that an allegation of fraud be pled with "particularity," including specific facts regarding "the alleged fraudulent statements, identity of the speaker, time and place

of the statements, and nature of the misrepresentation." *Henein*, 257 B.R. at 706 (citing *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51-52 (2d Cir. 1995)). With respect to fraudulent intent, "state of mind can be 'averred generally,'" but the movant "must allege facts that give rise to a strong inference of fraudulent intent." *Id.* (quoting *Acito*, 47 F.3d at 52). "This inference may be established either '(a) by alleging facts to show that defendant[] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Am. Honda Fin. Corp. v. Ippolito* (*In re Ippolito*), No. 12-70632-ast, 2013 WL 828316, at *4 (Bankr. E.D.N.Y. Mar. 6, 2013) (quoting *Acito*, 47 F.3d at 51-52).

In deciding the Motions to Dismiss, the Court must limit its review to facts and allegations contained in the complaints, documents incorporated into the complaints by reference or attached as exhibits and matters of which this Court may take judicial notice. *Blue Tree Hotels, Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *Moxey v. Pryor* (*In re Moxey*), 522 B.R. 428, 437-38 (Bankr. E.D.N.Y. 2014); *see also Int'l Tobacco Partners, Ltd. v. Ohio* (*In re Int'l Tobacco Partners, Ltd.*), 462 B.R. 378, 385 (Bankr. E.D.N.Y. 2011) ("The Court may also consider documents that are integral to the complaint in deciding a motion to dismiss." (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007))).

## B.  § 523(a)(2)(A) Dischargeability

Section 523(a)(2)(A) provides that a debt is nondischargeable under circumstances where the debt is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

False pretenses, false representation, and actual fraud represent three different concepts, and thus are treated as three separate causes of action. *Jadusingh v. Crossfield* (*In re Crossfield*), No. 8-11-72505-reg, 2012 WL 3637919, at *3 (Bankr. E.D.N.Y. Aug. 22, 2012); *Voyatzoglou v. Hambley* (*In re Hambley*), 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).  Plaintiff generally seeks relief under § 523(a)(2)(A), therefore the Court must evaluate Plaintiff's first and second causes of action under all three concepts. *See Ippolito*, 2013 WL 828316, at *4.

### 1. False Pretenses

A cause of action for false pretenses "involves an implied misrepresentation or conduct intended to create and foster a false impression." *Rescuecom Corp. v. Khafaga* (*In re Khafaga*), 419 B.R. 539, 546 (Bankr. E.D.N.Y. 2009) ("*Khafaga I*") (quoting *Minority Equity Capital Corp. v. Weinstein* (*In re Weinstein*), 31 B.R. 804, 809 (Bankr. E.D.N.Y. 1983)).  To establish a claim for false pretenses, a plaintiff must show: "(1) the [defendant] made an omission or implied misrepresentation; (2) promoted knowingly and willingly by the defendant[]; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff[]; (4) which wrongfully induced the plaintiff[] to advance money, property, or credit to the defendant." *Ippolito*, 2013 WL 828316, at *6 (alterations in original) (quoting *Khafaga I*, 419 B.R. at 546).  The "operative question" for a false pretenses cause of action is whether a plaintiff adequately alleges the fourth element: inducement. *Id.* at *6 n.8.

In the Complaint, Plaintiff did not allege that Debtor omitted or misrepresented any information when she applied for the BU Loan.[5]  *C.f. Argento v. Cahill* (*In re Cahill*), No. 15-72418-reg, 2017 WL 713565, at *2-4, *9 (Bankr. E.D.N.Y. Feb. 22, 2017); *Ippolito*, 2013 WL 828316, at *6.  While a debtor's conduct that created a false impression to promote a fraudulent

---

[5] Although Plaintiff alleges Debtor made misstatements in her application for the BU Loan in the Amended Complaints, those allegations are not considered here because, as set forth above, they do not relate back.

scheme may be sufficient to constitute false pretenses, such a situation is not alleged here.

Plaintiff alleges Debtor applied for the BU Loan to finance the 2008 Sale and used $295,298.38

of the BU Loan proceeds to satisfy the 2003 Mortgage.  Although it is unclear as to why Debtor

used an additional $51,800.18 from the BU Loan to write a check to her mother in connection

with the 2008 Sale and withdrew large sums from the account the check was deposited into, the

allegation that Debtor satisfied the 2003 Mortgage the day after the BU Loan was advanced

demonstrates that the BU Loan was used for the purpose Debtor stated she would use it for – to

finance her purchase of the Property.  Plaintiff's principal allegations focus on conduct that

occurred years after the BU Loan was given to Debtor and by no means were representations or

actions that caused Plaintiff to advance the BU Loan.  Accordingly, Plaintiff has failed to

plausibly plead a claim for false pretenses.

## 2.  *False Representation*

To establish a claim for false representation under § 523(a)(2)(A), Plaintiff must

demonstrate: "(1) the [Debtor] made a false or misleading statement (2) with intent to deceive (3)

in order for the [P]laintiff to turn over money or property to the [Debtor]." *Ippolito*, 2013 WL

828316, at *5 (alterations in original) (quoting *Crossfield*, 2012 WL 3637919, at *4).

"Moreover, a cause of action for false representation requires an express misrepresentation or

statement, either written or oral." *Id.* (citing *Vidomlanski v. Gabor* (*In re Gabor*), No. 05-18719-

ALG, 2009 WL 3233907, at *4 (Bankr. S.D.N.Y. Oct. 8, 2009)).

Here, the alleged misrepresentation Plaintiff claims as the basis for both of its

§ 523(a)(2)(A) causes of action is that Debtor promised to repay the BU Loan if the Property

were sold. [dkt item 11 at 6] Plaintiff cites *Bombardier Capital, Inc. v. Rodi* (*In re Rodi*), 163

B.R. 1017, 1023 (N.D. Ill. 1994) for the proposition that a statement related to future conduct is a

sufficient misrepresentation to sustain its claims.  However, that is not the law in the Second

Circuit: "[A] promise to be performed in the future is not sufficient to make a debt

nondischargeable, even though there is no excuse for the subsequent breach."  *Messmer v. Fenti*

(*In re Fenti*), No. 94-5025, 1994 WL 16167976, at *2 (2d Cir. Oct. 4, 1994); *see DeBrizzi v.*

*Dwyer* (*In re Dwyer*), No. 06-50358-AHWS, 2010 WL 419408, at *3 (Bankr. D. Conn. Jan. 29,

2010); *Gomez-Cuevas v. Barrios* (*In re Barrios*), No. 06-11852-brl, 2007 WL 2406881, at *3

(Bankr. S.D.N.Y. Aug. 20, 2007); *Kotan v. Austin* (*In re Austin*), 132 B.R. 1, 3-4 (Bankr.

E.D.N.Y. 1991); *Farina v. Balzano* (*In re Balzano*), 127 B.R. 524, 531 (Bankr. E.D.N.Y. 1991).

Debtor's mere promise to repay the BU Loan and later failure to do so is insufficient as a matter

of law to state a § 523(a)(2)(A) claim for false representation.

   Nevertheless, if a debtor had no intention of performing at the time they made a promise,

a debtor's misrepresentation of their intent is sufficient to sustain a § 523(a)(2)(A) cause of

action.  *Vaughn v. Williams* (*In re Williams*), 579 B.R. 314, 323 (S.D.N.Y. 2016); *Sharmat v.*

*Gallen* (*In re Gallen*), 559 B.R. 349, 357 (Bankr. S.D.N.Y. 2016).  Fraudulent intent can be

inferred but not presumed.  *Dwyer*, 2010 WL 419408, at *4.  Such an intent can be inferred

"where the promisor knew or believed that she would be financially unable to perform."

*Williams*, 579 B.R. at 314 n.7 (citing *Kuper v. Spar* (*In re Spar*), 176 B.R. 321, 327 (Bankr.

S.D.N.Y. 1994)).

   Plaintiff has failed to meet its *Iqbal/Twombly* burden with respect to pleading facts,

which, if accepted as true, would allow the Court to infer that Debtor did not intend to repay the

BU Loan at the time she signed the BU Note and Mortgage and agreed to repay it.  *Ippolito*,

2013 WL 828316, at * 5.  Plaintiff makes no allegations in the Complaint of such intent and did

not contend such until its opposition to the First MTD.  Even then, Plaintiff simply repeated from

Debtor's counsel's affirmation that Debtor is a "teacher's aide . . . with nominal income and no discernable assets" and concluded that Debtor could not have intended to repay the BU Loan. [dkt item 11 at 7] Such a recitation is the type of "mere conclusory statement[]" that is insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.   Moreover, since BU made Debtor the loan it either knew of Debtor's income and thus could have assessed her ability to pay the loan, or failed to investigate her income and did not assess her ability to repay the loan; either way, Plaintiff fails to allege how it reasonably relied on any statement by Debtor as to her ability to repay the loan at the time it was made with the alleged intent to deceive Plaintiff. Accordingly, Plaintiff has failed to plausibly plead a claim for false representation.

### 3.  *Actual Fraud*

Actual fraud under § 523(a)(2)(A), which refers to common law fraud, requires proof of the "five fingers" of fraud. *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006); *Crossfield*, 2012 WL 3637919, at *5.  To establish a claim for actual fraud, a plaintiff must demonstrate: (1) that the defendant made a false representation; (2) the defendant knew it was false at the time is was made; (3) that the defendant made the representation with the intention of deceiving the plaintiff; (4) that the plaintiff justifiably relied on the representation; and (5) the plaintiff sustained damages that were proximately caused by the false material representation. *Citibank v. Olwan* (*In re Olwan*), 312 B.R. 476, 482 (Bankr. E.D.N.Y. 2004).

In addition, the Supreme Court recently held that "actual fraud" in § 523(a)(2)(A) encompasses "forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

> Fraudulent conveyances typically involve "a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration."  In such cases, the fraudulent conduct is not in dishonestly inducing a creditor to extend

a debt. It is in the acts of concealment and hindrance.

*Id.* at 1587 (citations omitted) (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 540-41 (1994)). For the reasons set forth above, Plaintiff has failed to identify a false representation upon which it relied to sustain an actual fraud claim based upon a misrepresentation. Therefore, the Court will consider whether Plaintiff has properly pled a fraudulent conveyance scheme cognizable under *Husky*.

As to Plaintiff's first cause of action, Plaintiff asserts that Debtor violated N.Y. Penal Law § 185.10, which states:

> A person is guilty of fraudulent disposition of mortgaged property when, having theretofore executed a mortgage of real or personal property or any instrument intended to operate as such, he sells, assigns, exchanges, secretes, injures, destroys or otherwise disposes of any part of the property, upon which the mortgage or other instrument is at the time a lien, with intent thereby to defraud the mortgagee or a purchaser thereof.

N.Y. PENAL LAW § 185.10 (McKinney's 2018). Actual intent to defraud creditors can be shown by the presence of multiple "badges of fraud," which are circumstances that support an inference of intent because they are commonly associated with fraudulent transfers. *McCord v. Ally Financial, Inc. (In re USA United Fleet, Inc.)*, 559 B.R. 41, 57 (Bankr. E.D.N.Y. 2016). The badges of fraud include:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

*Id.* at 57-58 (citing *Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1582-83 (2d Cir. 1983)). However, Plaintiff made no allegations that could demonstrate Debtor could have possessed the requisite intent to defraud Plaintiff at the time of the 2013 Sale under any of the aforementioned six badges of fraud and/or under the Penal Law it cites. Moreover, Plaintiff made no allegations that suggest the 2013 Sale was itself fraudulent – no allegations were made that the sale was for inadequate consideration or that it was not an arm's length sale to a third party. Plaintiff's chief concern is what Debtor did or did not do with the proceeds from selling the Property, but not with the 2013 Sale itself. That removes the 2013 Sale from the realm of a *Husky* claim as there are no allegations that the 2013 Sale was a fraudulent transfer nor any indicia of fraud regarding the 2013 Sale.

The debt owed by Debtor to Plaintiff has been reduced to a money judgment based on Debtor's failure to repay the BU Loan with proceeds from the 2013 Sale. Judge Feuerstein's decision was not based upon fraud. Although Plaintiff asserted a fraud claim against Debtor in the District Action, Plaintiff subsequently withdrew its fraud claim after the court held that Debtor breached the BU Note. [dkt item 5-2] "Section 523(a)(2)(A) does not provide a cause of action that simultaneously creates a debt and renders it nondischargeable," *Browne v. Lombard* (*In re Lombard*), No. 16-11181-BAH, 2017 WL 4857416, at *4 (Bankr. D.N.H. Oct. 25, 2017), and "*Husky* does not change the priority scheme of the Code to elevate an unsecured claim for contract damages to a non-dischargeable claim when it was not obtained by actual fraud," *Walker v. Vanwinkle* (*In re Vanwinkle*), 562 B.R. 671, 678 (Bankr. E.D. Ky. 2016). What Plaintiff seems to ignore is that had it recorded the BU Mortgage, the 2013 Sale would likely not have closed without that mortgage being paid off because the buyer would have insisted on a release of the BU Mortgage. Accordingly, Plaintiff's first cause of action fails to plausibly state

a claim for relief and is dismissed.

Plaintiff's second cause of action is that Debtor aided and abetted her Parents to fraudulently transfer the Property to the Carters as part of the 2013 Sale.  However, Plaintiff cites no authority for the existence of a nondischargeable claim of aiding and abetting a fraudulent transfer under § 523(a)(2)(A).  Further, even if such a claim was cognizable under federal law, there can be no aiding and abetting a fraudulent transfer if a fraudulent transfer did not occur, and as set forth above, the 2013 Sale was not fraudulent.  *See Matson v. Rescue Rangers, LLC* (*In re Rescue Rangers, LLC*), 576 B.R. 522, 530-31 (Bankr. E.D. Va. 2017).  Although Judge Feuerstein found that the Parents were unjustly enriched due to the 2013 Sale, unjust enrichment is not fraud—it is a restitution-based remedy.  *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 77 (E.D.N.Y. 2017).  Thus, Plaintiff's second cause of action fails to plausibly state a claim and is dismissed.

### III.  Leave to Amend

Finally, Plaintiff requested leave to amend its First Complaint in its affirmations in opposition to the Second and Third MTDs if this Court determined it failed to plausibly state a claim. [dkt items 15, 22] Although Plaintiff made this request in opposition papers after already filing the Amended Complaint, Plaintiff has failed to allege any additional facts upon which a §523(a)(2)(A) claim could be asserted even though it has had ample opportunity to do so.  "If an amendment is futile, 'it is not an abuse of discretion to deny leave to amend.'"  *Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119, 123 (E.D.N.Y. 2003) (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)).  An amendment is futile where it "would be subject to 'immediate dismissal' for failure to state a claim or on some other ground.'"  *Randolph-Rand Corp. of N.Y. v. Tidy Handbags, Inc.*, No. 96-1829, 2001 WL

1286989, at *5 (S.D.N.Y. Oct. 24, 2001) (quoting *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999)).

As set out above, Plaintiff has failed to allege adequate facts to support a § 523(a)(2)(A) claim. If it did so now, such claims would have to be of such a new and different nature that they would not relate back. As noted above, the core of operative facts thus far alleged as supporting the § 523(a)(2)(A) claims are based upon Debtor's knowledge of the BU Loan when selling the Property in 2013 and Debtor's alleged aiding and abetting of her Parents' reaping of a windfall due to the BU Mortgage being unrecorded. The time-barred § 523(a)(2)(B) claim that has been dismissed is based upon alleged misstatements contained in Debtor's application for the BU Loan. To sustain § 523(a)(2)(A) claims now would require Plaintiff to allege misconduct of Debtor in obtaining the BU Loan, which is time barred, or that the 2013 Sale was itself fraudulent, which has not been alleged and would also be time barred. *See Jennis v. Rood*, 310 F. App'x 439, 440 (2d Cir. 2009) (finding an amendment was futile because the relation back doctrine was not applicable); *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006) (stating leave to amend may be denied "implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss"), *abrogated on other grounds by F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013); *Devices Liquidation Trust v. Pinebridge Vantage Partners, L.P.* (*In re Pers. Commc'n Devices, LLC*), 528 B.R. 229, 245 n.19 (Bankr. E.D.N.Y. 2015) (denying request to grant leave to amend because "any further amended complaints would be barred as untimely").

Thus, because an amendment of the § 523(a)(2)(A) claims would be futile, leave to amend is denied and Plaintiff's complaints will be dismissed.

## <u>CONCLUSION</u>

Based upon the foregoing, Debtor's First MTD is granted because Plaintiff failed to state a claim under § 523(a)(2)(A), and Debtor's Second and Third MTDs are granted because the Amended Complaints are untimely and do not relate back to the First Complaint.  Further, Plaintiff's Motion to Vacate is denied.  This adversary proceeding may be closed.

**SO ORDERED.**



Dated: **January 25, 2019**
      **Central Islip, New York**

**Alan S. Trust**
**United States Bankruptcy Judge**